Daniel M. McDermott, United States Trustee, Plaintiff Appellee v. Theodore A Perez, Defendant Appellant. Oral argument not to exceed 15 minutes per side. Mr. Van Ness for the appellant. You may proceed. Good morning ladies and gentlemen, your honors. May it please the court, I'm Charles Van Ness for the appellant, Theodore Perez. I was also a bankruptcy attorney in the underlying matter, so I'm intimately familiar with all the details of what happened in the matter. The biggest issue that we've cited are what I believe to be repeated intertwining of the bankruptcy court's ultimate decision in this matter between the elements of concealment under section 727A2A and the elements of false oath under 727A4A. So I think like on the first day of law school, they taught us to look at the statute before we make a decision on these type or before we inquire on these types of matters. And that's where the first issue really arises is with the concealment element. Concealment requires an intent to bankruptcy trustee and a transfer or concealment of property of the debtor within one year prior to the filing of a bankruptcy petition. And the Sixth Circuit in the Keeney, in Ray Keeney, made it very clear all those elements apply. It's not about omitting something from the petition, it's about a transfer that occurred before the petition was filed. Something was not, I failed to list an asset. And so with that said, most of the issues in this case should have been and would be false oath under the false oath element where a debtor fails to list an asset or property that should have been or may have been omitted from a petition. Either way, the elements of fraudulent intent are the elements of both concealment under 2A and false oath under 4A are the same. We're looking at fraudulent intent. We have to look at the subjective mind of the debtor to determine what was their intent in leaving things out. Why did they do it? Was there some type of motive? Was there some type of scheme behind it? But that's a factual question, isn't it, counsel? Sure is. And if you're looking at that are on a different element, concealment of assets, if you're looking at the elements of concealment and applying facts from concealment to finding a false oath, then you're going in the wrong direction. And that's what we think went on here. In other words, your position is you can't, the trial court should not have used, drawn inferences based on facts that were more relevant to the A2A in making a finding under A4. Well, I would say that, yes. I would say that. But more importantly, we just don't know what the trial court considered since the conclusions made involve both elements. We don't know where, what facts were really determined to come to the final conclusion. If we're looking at two different elements, that's where I've, well, I'll get into each one in a moment and show where the distinctions are. But again, we're requiring knowledge and specific intent on behalf of the debtor. To speak to the specific issues that were in this case, there was four of them. And I would concede that they all would be potentially false oaths. So the debtor, the easiest one to look at is a Chase bank account. For whatever reason, this bank account was not listed in Schedule A via the petition, or it might have been B at the time. But it wasn't listed. Don't know how that happened. It never came up until trial that it wasn't listed. The debtor had provided documents throughout the proceeding to both the U.S. trustee and the standing trustee for this bank account. Literally, at trial, the U.S. trustee argued that you failed to list a dollar bank account and then realized, no, it's not a dollar bank account. It's actually a Chase account. In any event, nobody knew about it until the day of trial. Did you object at trial to that line of testimony? I doubt that I objected to it because it wasn't really so much the line of questioning. It was more about the fact that we had already introduced all these bank statements already because we were looking into the income elements that were being drawn from the bank statements, not at the actual bank statements themselves being omitted. But I didn't specifically object. I don't know that I need to because it's really about the matter of knowledge. Did the debtor even know he omitted it? I would say no. It's pretty evident that he didn't know it wasn't in there. I didn't know it wasn't in there. The trustee was confused about what was listed and what wasn't. It wasn't about that. It was more about what income that was listed in there, another element, another one of the false oaths was missing. So we believe that there was no knowledge that the debtor had that the bank account was missing from the petition. It was surprised at trial and the only issue, the only reason the bank statements were even involved in the case was to show income that the debtor had received from his wholly owned S Corp. So that was the only reason the bank statements were in. That's what we were looking for. We weren't hiding the bank statements. There was no motive not to have it there. The Bankruptcy Court made a conclusion that isn't, it's nowhere in the facts. It's just a conclusion made to fit the elements. She uses the words totality of circumstances but they're not, it just doesn't add up. So the valuation of precision was the second issue, the false oath. So we listed Precision Security Inc., which is an S Corporation, as having a value of zero. Not so much the corporation has a value of zero but the member or his stock in the company had a value of zero. When we value common stock we usually look at the value of the stock. In this case, this company had a $1.1 million judgment against it. That stock, as a wholly owned entity, had virtually no value. We believe no value at all. There's no evidence that it had any value. Instead the court looked at, well it must have value because the company had assets but that doesn't create value. You can't sell stock to something that it could but nobody would buy it. You can attempt to sell but nobody would buy stock to something that has no chance of being sold or liquidated for a monetary amount beyond the liabilities of the company. So we valued the, we valued common stock of the company at zero in this particular instance. And the assets of the business are not the debtors. It's the common stock that's the debtors. And the actual instructions for Schedule B specifically state that. Value the debtor's interest in the entity, not the company itself. So this wasn't about what the company is worth for us in a divorce action but rather what his interest in it, his common stock was worth. And we believe it's zero. To this day it's zero. Can't sell it. It's a closely held company with a key principle, not marketable. Correct. That's precisely the argument we're making is that it's a closely held company, happens all the time in small business bankruptcies. An individual has a small business, both him and the company are woefully in debt, as was in this case. There was the $1.1 million joint and several judgment and in that respect the valuation is zero. I'm not saying it's generous but that's what it's worth. And even if it wasn't, it wasn't an intent to deceive, just an intent to show. The trustee was intimately aware, I'm talking about the standing trustee, was very aware of the fact that there was a judgment against both the debtor and the ultimately filed a no asset report. Is that part of the record? Yes it is, your honor, multiple times. So there's a no asset report, never any assets found despite all of the omissions. And I know that materiality has to do more when we're looking at the elements of fraudulent intent. Materiality has to do more with whether it relates to the business and to the bankruptcy. But in this case, it should also to some extent relate to whether there was any harm done to anybody. Just to complete my argument, the third element was the failure to list a company by the name of T69P. T69P was a company that received or had real estate transferred from Precision, the S Corp we just talked about, into this form for the purpose of insurance. He ran a security business that had guns and other types of items and they didn't want to have the company own the property. They needed it being a different entity for the insurance purposes. So that's why it was formed. It never really went beyond formation. In Ohio, you can form a company simply by filing a certificate with the Ohio Secretary of State. That certificate doesn't show any membership interest. It just shows who the incorporator, who the person who formed it was. It doesn't say that the member. A lawyer can do it every day. It doesn't mean I'm the member or the shareholder. So there's no indication as to who the member was. And with regard to concealment, it was just the opposite. This is property that was transferred from Precision into an LLC. The only question is who's the owner, T69P. Admittedly not listed, the question of whether it should be listed or not is debatable. If it was the debtor's, then it should have been. If it's Precision's, then it shouldn't have been. Our conclusion was it was Precision's property and therefore it should not have been listed. The last item was, and the biggest item, was the income that the debtor derived from his S-Corporation. So like Your Honor just mentioned, with a closely held company, an S-Corp, all of the profits ultimately are imputed to the debtor and that person ultimately has to file them on their personal income tax returns, the profits. So in this case, the debtor had been embroiled in some legal affairs and he had not yet filed his tax returns for 2014 or 2015, just 2013. He duly listed the income from the S-Corp on the Statement of Financial Income he derived from the S-Corp on Schedule I, the reason being that it's not regular, it's not, it can't be discerned really until the end of the year what exactly he received. Let me ask you about that because you indicated in your brief that Mr. Perez didn't file a Chapter 13 because he was above the debt limits. But what if he had filed a Chapter 13? Wouldn't that be relevant, at least disclosed in somewhere on Schedule I as to this potential income or some reference to that so that interested parties could determine what his actual income and expenses would be on a regular basis? Yes, Your Honor. It would be relevant in that situation. We definitely disclosed it and we'd have to somehow account for it. But it's difficult to say that he gets this much per month. In fact, some years he gets nothing. May I go on for a minute with the questions? Sure. Okay. But with regard to that, ultimately it was the fact that he did disclose the fact that he had income from it, he just didn't know because his tax returns hadn't been complete. And that's the reason it was not listed, that's the reason it was omitted. There was nothing to be gained by not showing it. If he had filed the 13, we would have had to show income annually and keep disclosing it every year of the plan, at least in our district we would have to do that. So it wouldn't have been a difficult thing. It would have been more difficult to get his tax returns done. But this was a hastily filed case because of a judgment and multiple garnishments. And in this case, though, we do not believe that the bankruptcy court made the correct conclusion as to why the income was not listed. Thank you, Your Honor. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Sue Misakata for the United States Trustee. Your Honor, I'd like to just rebut one legal point that opposing counsels As an initial matter, the notion that an A-2 count cannot be satisfied by a failure to divulge information where it's required by law has already been decided by this Court in a decision called In Re Swiegen. We cited that on page 42 of our brief, albeit for a different proposition. But in fact, this Court has previously determined that you don't need a disposition or transfer of property to satisfy subsection A-2. You simply need to have failed to divulge information where you required to divulge that information by law. Is your count, is your 727-A-2 count relying on pre-petition or post-petition? From reviewing the complaint, it struck me that you were citing and relying on A-2-A. That's correct, Your Honor. That was what was pleaded in the complaint. The Court itself didn't specify which subsection of A-2 it found was being satisfied. So what pre-petition facts are you relying on to uphold the judgment under A-2-A, if any? So we cite on page 31 of our brief a bankruptcy court decision from the District of Kansas called Hadley. And Hadley explains that omissions on a bankruptcy schedule satisfies both subsections A and B of A-2. It covers both pre and post-petition for purposes of A-2. Now, since filing our brief, in the interest of full disclosure, I've since learned of an unreported decision by this court called In re Beckham, in which this court held that, in fact, omissions in a bankruptcy schedule are post-petition concealments under subsection B as opposed to pre-petition concealments under subsection A. That decision is reported at 2009 WL1726526. And that was decided in was actually litigated in that decision because, among other things, it doesn't address cases like Hadley or other cases like it that have determined that omissions in a bankruptcy schedule can satisfy both subsections A and B. In fact, when I discovered Beckham, I also discovered three other unreported decisions that support Hadley's proposition, which is that omissions in a bankruptcy schedule cover both sides of the petition filing. With your court's leave, I can also read those citations into the record, or if you prefer, I can just move on. Because either way, I believe the grounds under A-4 are satisfied because the Bankruptcy Court found those to be satisfied as well. I think you can move on. Thank you. Okay. Now, the Sixth Circuit explained in Keeney that complete financial disclosure is a prerequisite to the privilege of discharge. The Bankruptcy Court found that Mr. Perez intentionally failed to disclose his finances in full, so the privilege of discharge is no longer available to him. The Court found that Mr. Perez had failed to report three assets and underreported the value of a fourth asset in his bankruptcy filings, which he swore under penalty of perjury to be true and correct. Specifically, the Court found that Mr. Perez had omitted income in the form of paid personal expenses and cash withdrawals that he was getting from a security company, Precision, his ownership interest in T69P, which owned the property on which Precision was operating, and for which Precision had taken out a loan to pay the mortgage. The third was the existence of Mr. Perez's personal Chase Bank account, which was active through the year until he filed for bankruptcy, in which there are deposits of considerable amounts from sources that Mr. Perez declined at trial to identify. And the Court also found that Mr. Perez had misrepresented the value of his interest in Precision as zero. The Court found the true value was higher if you looked at Precision as an ongoing concern. That's what it states in page four of its oral ruling. Precision as an ongoing business concern, in light of the profits it was making and the income Mr. Perez was receiving, clearly had a higher value than zero. And the Court looked at the totality of the circumstances, in particular the $1.2 million judgment against Mr. Perez and the pattern of omissions he made in his schedules, each of which reflect in some way how well Precision was doing and what value it was giving to Mr. Perez. And with the totality of those circumstances... In response to Mr. Van Ness's assertion that this was a hastily prepared petition and essentially most of this information was disclosed to the Chapter 7 trustee and that they really are immaterial, considering his assets compared to his liabilities. The T69P was not disclosed, nor was his Chase Bank account. He was specifically asked at his meeting of creditors what bank accounts he had and he did not disclose. He disclosed  He provided statements. I'm sorry? He did provide the bank statements. Is that correct to the Chapter 7 trustee or is that not correct? He provided the bank statements through discovery in this adversary proceeding. When asked at his meeting of creditors by his Chapter 7 trustee what bank accounts he had, he disclosed the two that he put in his bankruptcy schedules. He stated there was the credit union account and the dollar bank account. He did not disclose his Chase Bank account, despite the fact that he admitted at trial, yes, it was a very active account in which there were considerable deposits being made. So that is inconsistent with his statement that it was a complete omission in preparing schedules. Additionally, in fact, in his deposition, which came after his meeting of creditors, Mr. Perez was informed that the Chase Bank account was not in his bankruptcy schedules. He was asked again what bank accounts he had. He disclosed his dollar bank account and the Chase Bank account this time and then was asked, well, why is the Chase Bank account not in your schedules? And this is in, I believe, Exhibit 8. And so in that back and forth, I believe Mr. Perez said, well, in fact, that's mostly a business account. It wasn't very active, which, again, are inconsistent with the testimony he made at trial in which he conceded it was a personal account and that it was an active account. Well, why don't you just start and end your case with that? I mean, it seems to me it's a pretty clear position that the account was never disclosed in the schedules and documents weren't given until a deposition discovery. Isn't that your case right there? You don't need to go through all these other things? Your Honor, if your honors are happy with that, that's certainly fine because one count by itself is more than enough to deny the discharge. I would simply point out that there was a pattern of omissions, all of which contribute to the bolsters the bankruptcy court's finding that there was an intent to hide Mr. Perez's financial condition. So we have to go through all the other ones just to show that there's intent on this one? Is that your thought? I think that all of them are sufficient on their own to qualify to deny Mr. Perez's discharge, each independently of itself. And if this court is satisfied with the omission of the Chase Bank account from his schedules, I'm happy to rest on my brace after that. But if it was so important, why wasn't it in the complaint? Your Honor, this was an unusual case, procedurally speaking. It took quite a long time from the time of filing of the original complaint until the time of trial. They had to stay proceedings, including discovery, for a period of, I believe, at least six months, pending the criminal investigation into Mr. Perez. There was another stay of proceedings pending a separate adversary proceeding against Mr. Perez. And in the intervening time period, both the presiding judge and the trial attorney for the U.S. trustee who was prosecuting this case had retired. And so there was a long period of time in which the original complaint was filed where there was no knowledge of this Chase Bank account until after discovery had occurred. And then discovery had begun and had stalled, and there was a change of attorneys, and then it proceeded again, and then they went to trial. And yes, that is when the omission of the Chase Bank account was clear. But Mr. Perez knew about the omission of that Chase Bank account from his schedules during that long delay in between the filing of the complaint and trial, and yet he still did not amend or try to correct his schedules, which, again, bolsters the Frank C. Colt's court's finding of intent that he did so to... When was his deposition taken where he was told about the Chase account? I beg your pardon? When was the deposition taken where he was told about the Chase account? I believe it was... I'm sorry, I just wanted to correct the record. I accidentally said Exhibit 8. In fact, it's Exhibit 7, where the deposition took place. And so the... So the complaint was filed in May 2016, and the proceedings were stayed in November of 2016. I I'm sorry to interrupt you like that. No, not at all. Thank you, Your Honor. Now, Mr. Perez disputes many things. He disputes whether or not he undervalued his interest. He disputes whether or not he actually owned T69P. He disputes whether the U.S. trustee should have been permitted to amend his complaint. Most of all, though, he disputes the court's finding of intent. But the Bankruptcy Court heard all of these arguments that Mr. Perez has made, and it considered them, and it rejected them based on the record before it. And, you know, it did so based on the trial that was conducted, listening to the witnesses, hearing their testimony, and assessing their credibility. And the court made its factual findings that Mr. Perez made these omissions with intent to hide his financial condition. These findings are not clearly erroneous, and they must be reviewed with great deference on appeal. And Mr. Perez seems to recognize that the standard of review on appeal might be a problem for him, because on page 4 of his reply brief, he asked this court to review all of the opinion, including the factual findings, on a de novo standard, which is not the correct standard. And in support of this statement, Mr. Perez cites the Sixth Circuit opinion, Adele v. John Richards Home Building Company. But that's not actually what Adele stands for. What Adele stated was that the appellate court will, quote, not disturb the Bankruptcy Court's finding of fact unless there is the most cogent evidence of mistake of justice. And Mr. Perez has not met that standard on appeal. Unless this court has any other questions? A question regarding the motion to amend to conform the pleadings to the evidence at trial. Is that motion necessary, given the last line of Rule 15, which says a matter is fair to amend the pleadings, doesn't change the result at trial? How do you square those two things? Oh, I agree that it wasn't necessary, Your Honor. I believe we were acting out of sort of additional security, perhaps you would say. But I don't believe it actually was necessary, given that the court had made those findings at the submission of the end of evidence. But Mr. Perez argued that the... What role of surprise, though? I mean, it strikes me that the pleadings are designed largely to put people on notice of what they're going to be facing at trial. And I understand they're liberally amended and all that, including post-trial in your case. But how do you respond to the suggestion that in the heat of trial, this Chase Bank issue, which had some relevance perhaps to the income issue, in other words, this is where some of the money from Precision was going, and that's why it should have been disclosed under the SOFA. You knew it was coming in. You had those records. I think that was the gist of your argument. But how do you square that with, well, now you're using it on the separate false oath, and there was no notice to me that I would be facing that at trial? Your Honor, the evidence of the income that he was getting from Precision was also evident from the Precision bank accounts that were separately submitted, and that was included. But certainly, he was aware that the personal Chase Bank accounts were not in his schedules, as was clear through the course of discovery. And two, he had an issue with this notion that the questioning about the omission of his personal Chase Bank account was outside of the scope of the pleadings, or that he thought it was irrelevant for purposes of the omissions. He could have and should have objected at trial. But I guess my question is a little more subtle, I suppose. And that is, the Chase Bank accounts were relevant to the 727, I guess, the SOFA issue. In other words, part of your SOFA, problems with the SOFA 2014 and 2013, income was not disclosed. And I think your argument was, somebody's argument from your office was, well, you had all the records and you knew what was coming in. So it's almost, you know, we couldn't really complain that he didn't object on relevance grounds, because that document, the Chase Bank statements were relevant to the income issue. But how was he to know that you were going to make the omission from the schedules and issue a trial if it wasn't in the complaint? Well, it was because we made the charge at trial. We asked him point-blank, why was the personal Chase Bank account not included in your schedules? And he had the opportunity to address that. You should have said, this is not in your complaint. It's not, you know, I object, and not on relevance, but it's not in the complaint. I think saying that it's outside the scope of the complaint, given what your Honor said about giving notice to the parties as to what the trial is going to be, certainly being asked, well, these schedules don't reflect this personal bank account, would have given them notice that that is being tried. And so, yes, I think that that's when, I do believe that it was incumbent upon Mr. Perez to object to say, I wasn't aware that this was going to be an issue here. Instead, he seemed to accept, yes, this, and he really could not answer as to why it wasn't in the schedules. He did not, at trial, say it was a mistake or that it was inadvertent. He simply said he couldn't answer that question. It was only after his sworn testimony was over in the post-trial briefs that he said it was a mistake. And again, if this Court disagrees that, you know, the U.S. trustee should have been permitted to amend his complaint, there are three other material omissions that the Court found that would also qualify to deny Mr. Perez his discharge. Unless this Court has any other questions? I have no questions. Thank you. Thank you. Thank you, Counsel. I'll start first with the Chase account. I didn't even realize until Counsel just mentioned the fact that it was mentioned at the deposition and the fact that the deposition was in 2016, the trial in 2018, that the amount of time that it passed before they brought it up and still didn't amend the complaint any time before. Do you recall when it was mentioned at the deposition that you didn't go back and amend the schedules to reflect that? I don't recall it being mentioned in the deposition, Your Honor. I literally just heard this now. I have no doubt she's accurately recited some facts for something that happened over a long, long period of time, but it simply was not made an issue, is my point, until two-thirds, almost three-fourths of the way through the trial. And as Counsel just stated, the point, the debtor couldn't answer the question because he didn't have any idea it was missing. I mean, he just didn't realize that was an issue, nor did I. And I didn't object because I didn't even know it was being brought up. It wasn't in the complaint. But the Chase account, at the beginning of her argument, she mentioned that it was only presented as discovery. And that's not true because at the 341, the trustee had requested bank statements as well as the U.S. trustee's analyst, Ms. Lohman, who testified at trial, also requested these documents. So this is stuff that was provided and then formed the basis of their complaint when she did. There's all these arguments that it was provided after the complaint. No, it was provided before because she had done a ton of analysis of the bank statements to determine that there was omitted income. And that was the whole point of it. So it was definitely given to the U.S. trustee almost from the outside of the case. It was never intended to be omitted. I think what Mr. Perez perhaps meant is that he used it, that account for his business transactions in relation to precision. But nonetheless, it wasn't listed. It should have been listed. It was a mistake. It was inadvertent. I think that evidence is clear just based on our debate about the matter. One of the things that has been brought up, though, is, and the first thing that counsel said, is that it's very unclear as to what the court was deciding this case on. So I want to read one passage. And it says, and this is on the oral decision that was made at bankruptcy docket number 71 on page 6. So the failure to have included precision benefits and income in the SOFA and the schedules, I find, was done with the intent to actually have hidden that information and therefore to present a false view of his financial condition in the context of this case to the detriment of creditors. And counsel just said, we don't know what the court really decided, how the law was applied. We're talking about a pure concealment argument to find fraudulent intent for false oath. That is what the argument is. And that's why it was so difficult to brief the issue. What are we briefing? Are we briefing concealment? Are we briefing false oath? In this case, there were technical false oaths. There were false oaths all the time. They are immaterial in terms of the law, but they're immaterial in terms of amount and the outcome of the case. This debtor was woefully insolvent under any standard of the word. And even if these things were listed, nothing would change. No asset case. He should have received a discharge. There's no way that, you know, because it was hastily filed, he hadn't completed his tax returns. But yeah, that was the one lesson to be learned here is perhaps have your financial matters in order, but you don't always do that when you're being garnished and being sued. With that said, I do believe that this case should be reversed, whether under an abuse of discretion standard or de novo standard. And if the court has any further questions, I'd be glad to answer. It's the transcript that you really are appealing, isn't it? I mean, it was a bench opinion, and that's the basis for what brings you here today, it seems to me. What was ever said by the bankruptcy judge back in, what was it, August 15, 2018. That's the transcript you want us to look at, correct? I am appealing the ultimate decision, Your Honor. Right. Thank you. I don't have any further questions. Thank you, Your Honor. This honorable court now stands adjourned.